**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| BERTHA MARTINEZ, | ) | NO. ED CV 17-314-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PROCEEDINGS**

Plaintiff filed a Complaint on February 20, 2017, seeking review of the Commissioner's denial of benefits. The parties filed a consent to proceed before a United States Magistrate Judge on March 27, 2017. Plaintiff filed a motion for summary judgment on June 30, 2017. Defendant filed a motion for summary judgment on July 31, 2017. The Court has taken both motions under submission without oral argument. See L.R. 7-15; "Order," filed February 28, 2017.

///

///

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff came to the United States in 1974 when she was 17 years old (Administrative Record ("A.R.") 34). Plaintiff worked from 1974 until January 15, 2010, when she reportedly injured her hand and was laid off. See A.R. 35, 39, 223, 308; see also A.R. 198-99 (earnings history showing income reported from 1976 through 2009). On June 28, 2013, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning January 15, 2010 (A.R. 175-90). Plaintiff alleged disability due to depression (Major Depressive Disorder, severe, recurrent), type II diabetes, high cholesterol, hypertension, and a low white blood cell count (A.R. 222).

Plaintiff presented, among other evidence, a March 3, 2014 "Short-Form Evaluation for Mental Disorders" signed by her treating psychiatrist, Dr. Magad Estafan (A.R. 428-32). In this evaluation, Dr. Estafan opined that Plaintiff has limitations which, according to definitions on the form, would preclude sustained work activity. See A.R. 428-32. Other examining and reviewing doctors found lesser mental limitations than found by Dr. Estafan. See A.R. 306-10 (consultative examiner's evaluation opining that Plaintiff's mental condition would cause at most "mild" difficulties); see also A.R. 61, 71-72, 83-84 (State agency physicians' opinions that Plaintiff's alleged mental impairment is non-severe; rejecting Dr. Estafan's opinions as inconsistent with his own records, overly restrictive, and not supported by the overall evidence in the file).

///

An Administrative Law Judge ("ALJ") examined the medical record and heard testimony from Plaintiff and a vocational expert (A.R. 17-25, 30-115, 221-464). The ALJ found Plaintiff has severe depression, diabetes, high blood pressure, and a right shoulder injury, but retains the residual functional capacity to perform a limited range of sedentary work (i.e., Plaintiff would be precluded from reaching overhead with the right upper extremity, but shoulder level reaching would be allowed, and Plaintiff would be limited to performing "non-complex routine tasks in a static work environment"). See A.R. 19-24 (reportedly assessing a more restricted residual functional capacity than suggested by the consultative examiners and State agency physicians). The ALJ found that a person with this capacity could perform Plaintiff's past relevant work as a final assembler (A.R. 24-25 (adopting vocational expert testimony at A.R. 53-54)).

In finding Plaintiff not disabled, the ALJ deemed Plaintiff's statements concerning the alleged severity of her subjective symptomatology only partially credible (A.R. 22-23). The ALJ also discounted Dr. Estafan's opinions (A.R. 24). On December 28, 2016, the Appeals Council denied review (A.R. 1-4).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,

499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may
> not substitute its judgment for that of the ALJ. But the
> Commissioner's decision cannot be affirmed simply by
> isolating a specific quantum of supporting evidence.
> Rather, a court must consider the record as a whole,
> weighing both evidence that supports and evidence that
> detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

## DISCUSSION

Plaintiff contends that the ALJ failed to state sufficient reasons for rejecting Dr. Estafan's opinions. Plaintiff does not challenge any of the ALJ's other findings or conclusions. After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied. The Administration's findings are
///
///
///

supported by substantial evidence and are free from material[1] legal error.  Plaintiff's contrary argument is unavailing.

I.    **Summary of the Medical Record**

Plaintiff's medical records include reports from an eight-day hospital stay in October of 2006, for major depression, single episode, severe, without psychotic features, when Plaintiff was experiencing suicidal ideation and was placed on a psychiatric hold (A.R. 227, 279-97).  Treating psychiatrist Dr. Bhupinder Nakai prescribed Prozac, which improved Plaintiff's condition to "stable," and referred her to himself for outpatient treatment (A.R. 280-81). It is unclear whether Plaintiff followed up with Dr. Nakai as referred.  The record contains no other indications of any treatment with Dr. Nakai.

During Plaintiff's hospital stay, a doctor examined her and ordered blood testing to evaluate her diabetes (A.R. 285-92). Plaintiff had reported a 10-year history of type II diabetes (A.R. 285).  Her examination was normal but for reports of left leg pain (A.R. 285-86).  Plaintiff's blood glucose levels were high (A.R. 287, 290).  Plaintiff was diagnosed with diabetes and hypertension for which she was prescribed medication (A.R. 286).  As indicated above, Plaintiff worked until she was laid off in January of 2010, despite

---

[1]    The harmless error rule applies to the review of administrative decisions regarding disability.  See Garcia v. Commissioner, 768 F.3d 925, 932-33 (9th Cir. 2014); McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011).

her depression, diabetes, and hypertension (A.R. 223).

The next treatment records are for emergency room visits for Plaintiff's alleged physical conditions starting in January of 2011.[2]

_____

[2] In January of 2011, Plaintiff presented to the emergency room complaining of chest pain (A.R. 376-89). After blood testing, chest x-rays, echocardiograms, and a stress test, Plaintiff was diagnosed with: (1) chest pain ("CP") secondary to costochondritis (inflammation of costochondral cartilage); (2) diabetes mellitus out of control ("DMOOC"); (3) hypertension ("HTN"); and (4) dyslipidemia (abnormal concentrations of lipids or lipoproteins in the blood) (A.R. 379-89). See Definitions of "costochondritis," "tietze's syndrome," and "dyslipidemia," available online at https://www.merriam-webster.com/medical/costochondritis, https://www.merriam-webster.com/medical/Tietze's%20syndrome, https://www.merriam-webster.com/medical/dyslipidemia, and (last visited Aug. 15, 2017).

In May of 2011, Plaintiff presented to the emergency room complaining of a headache ("HA") with increasing pain and nausea (A.R. 372). Plaintiff reportedly said she had been told that she had a tumor (A.R. 372). A CT scan of her head was negative (A.R. 375). She was prescribed medication and referred to her primary care physician for follow up (A.R. 373). In June of 2011, Plaintiff presented to the emergency room complaining of vaginal burning for which she was prescribed medication (A.R. 367-71). In October of 2012, Plaintiff presented to the emergency room complaining of epigastric pain, which resolved with medicine (A.R. 354-60). In December of 2013, Plaintiff presented to the emergency room for refills of her diabetes and hypertension medications (A.R. 318-21).

Sporadic blood tests from June of 2012 through September of 2013 showed low white blood cell counts and, when included in the tests, high glucose, cholesterol, and triglycerides (A.R. 324-27, 342-48, 361-66). In May of 2013, Plaintiff was treated for "mild" leukopenia (low white blood cell count) secondary to vitamin B12 deficiency (A.R. 341-48). See Definition of "leukopenia," available online at https://www.merriam-webster.com/dictionary/leukopenia#medicalDictionary (last visited Aug. 15, 2017). By October of 2013, Plaintiff's leukopenia had "resolved" (A.R. 322-24). In January of 2014, Plaintiff was

(continued...)

There are no records of any follow up with a primary care physician until three years later, when Plaintiff began treatment with Dr. Arsalan Pourteymour in January of 2014.  <u>See</u> A.R. 391-402, 449-64 (treatment notes from January through October 2014).  In January of 2014, Dr. Pourteymour diagnosed diabetes, hypertension, and obesity, and ordered a colonoscopy, a diabetes class, and weight management (A.R. 402).  Blood testing showed high glucose and cholesterol (A.R. 399-401).  In February of 2014, Dr. Pourteymour renewed Plaintiff's diabetes medication (A.R. 395).  At the same time, Dr. Pourteymour completed a "Treating Physician General Medical Evaluation" (A.R. 391-92).  It appears that Dr. Pourteymour was also given a "Medical Source Statement - Physical" form which he did not complete (A.R. 393-94). Until October of 2014, Plaintiff returned to Dr. Pourteymour approximately once per month for checkups and medication refills (A.R. 448).[3]

The next treatment note for Plaintiff's depression after her 2006 hospital stay is from April of 2012, when, at her sister's urging, Plaintiff sought treatment at the San Bernardino County Department of Behavioral Health Upland Community Counseling ("UCC") (A.R. 409-17). Plaintiff was "very tearful, looked away, [and] seemed embarrassed

---

[2](...continued)
treated for "mild" esophagitis and "mild" gastritis (A.R. 312-13).  A gastric biopsy indicated "chronic gastritis" (A.R. 314-17).

[3]     X-rays of Plaintiff's right hip, right knee, and lumbar spine from February of 2015, showed no acute osseous injury and evidence of mild degenerative joint disease ("DJD") in the right hip (A.R. 458-60).  Blood testing from May of 2015 showed high glucose and triglycerides (A.R. 455-57).

about being here" (A.R. 414).  Plaintiff reported depression for approximately eight years with the following claimed symptoms:  crying spells every day, feeling desperate and like "running away," passing suicidal ideation approximately once a month, an inability to maintain a job because she "doesn't pay attention" and forgets what she is doing, sometimes forgetting where she is going, poor sleep of approximately two hours per night, poor concentration on tasks requiring sustained attention, overeating, and not wanting to shower or take care of herself (A.R. 409, 411, 413-14).  She reported that she was taking Prozac four years earlier and was on Prozac for approximately one year (A.R. 412).  Although she reportedly did well on Prozac, she supposedly stopped taking it because she could not afford it (A.R. 417).  A therapist assessed a Global Assessment of Functioning ("GAF") score of 40, indicating "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood" (A.R. 416).  <u>See</u> American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> ("DSM") 34 (4th Ed. 2000) (Text Revision) (GAF scale for range of 31-40).[4]

Plaintiff returned to Dr. W. Edison Houpt, Jr. in June of 2012 for a psychiatric evaluation (A.R. 418-19).  Plaintiff then was taking Prozac and Trazodone (A.R. 418).  She reported, <u>inter alia</u>, feeling very nervous and desperate, with breathing problems and poor sleep (A.R. 418).  According to Plaintiff, Trazodone makes her swollen and puffy at her hands and feet, but Prozac makes her feel better (A.R.

---

[4]    Clinicians use the GAF scale to rate "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  <u>Id.</u>

418).  On examination, she reportedly was withdrawn, tearful, and had a sad face, slow and soft speech, and a depressed mood/affect (A.R. 419).  Dr. Houpt diagnosed Major Depressive Disorder ("MDD") and assigned a GAF of 38 (A.R. 419).  Dr. Houpt increased Plaintiff's Prozac and prescribed Elavil (A.R. 419).

Plaintiff returned to the UCC approximately once every three months after her initial evaluation (A.R. 420-27).  In October of 2012, Plaintiff stated, "I'm well" (A.R. 420).  She was taking Elavil and reported she was less depressed, more patient, and better able to tolerate her daughter (A.R. 420).  In January of 2013, Plaintiff reported she was feeling better (though not happier), i.e., approximately 60 percent better than she felt in the past, and she was "calmer" and sleeping well as long as she takes Elavil, but claimed to be forgetful at times (A.R. 421).  In March of 2013, Plaintiff may have reported feeling that her medications were causing harm to her or just not working anymore (A.R. 422).[5]  She supposedly was tired, unmotivated and apathetic (id.).  Her diabetes reportedly was out of control, and she indicated her Prozac helps "a little" (id.).  She claimed to cry a lot, and she also said she sleeps better with Elavil (A.R. 422).

In June of 2013, Plaintiff started treatment with Dr. Estafan (A.R. 423).  She reported she was doing well on her current medications and was "happy [with] her life style" (A.R. 423).  Dr. Estafan described Plaintiff's recovery as "stable" (A.R. 423).  In

---

[5]     This handwritten treatment note is partially illegible. See A.R. 422.

September of 2013, Plaintiff reported she was "very anxious" because her daughter had tried to kill herself, but Plaintiff nonetheless was sleeping well (A.R. 424). Dr. Estafan again described Plaintiff's recovery as "stable," although he added Klonopin to her medications and increased her Zoloft dose (A.R. 424). In November of 2013, Plaintiff reported she was pleased with her progress (A.R. 425). She had no panic attacks or mood swings since the increased Zoloft and the addition of Klonopin (A.R. 425). Dr. Estafan again described Plaintiff's recovery as "stable" (A.R. 425).

On January 13, 2014, Plaintiff reported she had been denied Social Security benefits (A.R. 426). She was compliant with her medications but reportedly still felt depressed and anxious, felt she had no autonomy because she was living with her daughter, and had no income (A.R. 426).[6] Dr. Estafan continued Plaintiff's medications and referred her to "groups in Spanish" (presumably group therapy) (A.R. 426). On January 27, 2014, Plaintiff reported she felt much better but was stressed by financial difficulties (A.R. 427). Dr. Estafan increased Plaintiff's Klonopin dose (A.R. 427).

On March 3, 2014, Dr. Estafan signed a "Short-Form Evaluation for Mental Disorders" form (A.R. 428-32).[7] Plaintiff then was taking 100 mg of Zoloft and 0.5 mg of Clonazepam (Klonopin) (A.R. 428). Her

---

[6]    Dr. Estafan noted that Plaintiff drives her car to the UCC for her appointments (A.R. 426).

[7]    The handwriting on the form appears different from the handwriting on Dr. Estafan's treatment notes. Compare A.R. 423-27 with A.R. 429-32.

current mental status examination was unremarkable except for the following notations by Dr. Estafan: (1) she was moderately impaired in concentration, but her memory was normal and her intelligence was average, with the comment, "client reports poor concentration, difficulty focusing and sustaining attention"; and (2) Plaintiff had a "depressed" mood and "labile" affect, with the comment, "client reports depressed mood daily" (A.R. 429-30). Her progress and prognosis was "fair" (A.R. 430). In a check-box portion of the form relating to Plaintiff's abilities to do certain tasks, Dr. Estafan indicated that Plaintiff had a "fair"[8] ability to understand, remember, and carry out complex and simple instructions, and to respond appropriately to changes in a work setting (A.R. 431). Dr. Estafan indicated that Plaintiff had "poor" ability to maintain concentration, attention and persistence, to perform activities within a schedule and maintain regular attendance, to complete a normal workday or workweek without interruptions from psychologically based symptoms, and to interact appropriately with the public, supervisors, and coworkers (A.R. 431).

///

---

[8] As relevant herein, the form defines "fair" and "poor" as follows:

Fair - The evidence supports the conclusion that the individual's capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described.

Poor - The evidence supports the conclusion that the individual cannot usefully perform or sustain the activity.

(A.R. 431).

On March 24, 2014, Plaintiff returned to Dr. Estafan (A.R. 445). Plaintiff then reported that she was very pleased with her progress, had no panic attacks, was sleeping well, had no crying spells, smiles, socializes, and was more animated (A.R. 445). Dr. Estafan described Plaintiff as "medically stable" and continued her medications (A.R. 445). In May of 2014, Plaintiff reported that she was really improving, sleeping better, feeling stronger and more confident, but struggling with her father's terminal illness (A.R. 444). Dr. Estafan described Plaintiff's recovery as "stable" and continued her medications (A.R. 444). In June of 2014, Plaintiff reported that she felt depressed due to the recent loss of her father to cancer (A.R. 443). She supposedly was avoiding certain activities because she felt depressed and very anxious (A.R. 443). Dr. Estafan increased Plaintiff's Clonazepam (A.R. 443).

Thereafter, Plaintiff saw other doctors at the UCC (A.R. 439-42). In September of 2014 and December of 2014, Plaintiff reportedly was depressed and anxious with a constricted affect (A.R. 442-43). In February of 2015, Plaintiff said, "I'm doing better. My only problem is my children are always scrutinizing me" (A.R. 440). She was "still not getting any help from SSI" and had been denied three times (A.R. 440). In April of 2015, Plaintiff reported she was anxious and depressed and that her Social Security application had been denied three times (A.R. 439). Her medications were continued through these visits (A.R. 437).

As part of her disability evaluation, Plaintiff underwent two consultative examinations in October of 2013. Dr. Ruben Ustaris

evaluated Plaintiff and prepared an Internal Medicine Consultation dated October 22, 2013 (A.R. 300-04). Plaintiff reported a history of diabetes and hypertension for which she was taking medication (and for which she denied any symptoms), chronic right shoulder pain status post surgery in 2009, depression, occasional abdominal pain, and anemia (A.R. 300). On examination, Plaintiff had unremarkable findings except for decreased range of motion in the right shoulder with mild pain (A.R. 301-03). Dr. Ustaris diagnosed: (1) chronic right shoulder pain status post surgery with restricted range of motion on examination; (2) a history of diabetes mellitus, "on medication and asymptomatic"; (3) hypertension, "on medication" "controlled and asymptomatic"; (4) depression "on medication"; (5) abdominal pain "on medication"; and (6) anemia of unknown etiology (A.R. 303). Dr. Ustaris opined that Plaintiff could perform medium work, i.e., she could lift and carry 50 pounds occasionally and 25 pounds frequently with no standing or sitting limitations, but with a restriction to frequent pushing and pulling and overhead reaching with the right upper extremity (A.R. 303-04).

Dr. Krushro Unwalla evaluated Plaintiff and prepared a Complete Psychiatric Evaluation dated October 24, 2013 (A.R. 306-10). Dr. Unwalla reviewed medical records from the UCC indicating that Plaintiff had been diagnosed with Major Depressive Disorder and had been treated with Prozac and Elavil (A.R. 306). Her medications were changed around July of 2013 to Zoloft and Klonopin, which reportedly improved Plaintiff's symptoms (A.R. 307; see also A.R. 300 (Plaintiff reporting to Dr. Ustaris that she then was taking Sertraline (Zoloft) and Clonazepam (Klonopin))). Plaintiff reported that her depression

started approximately seven years before the evaluation, _i.e._, at the time of her psychiatric hold in 2006 (A.R. 306-07).  Plaintiff's mental status examination yielded normal findings, except for the following: (1) Plaintiff's mood was euthymic; (2) she claimed she is forgetful at times; (3) she was unable to do serial sevens or threes, but able to do serial twos; (4) she was unable to name the past two United States Presidents, or the capitals of the United States or California;[9] and (5) her insight and judgment were described as "fair," with "common sense understandings" (A.R. 308-09).  Dr. Unwalla stated that Plaintiff was "adhering and responding well to treatment" and that her "mood and neurovegetative symptoms have improved" (A.R. 310).

Dr. Unwalla diagnosed Major Depressive Disorder without psychotic features with a "fair" prognosis, and assigned Plaintiff a GAF score of 66, which indicated "some mild symptoms" (A.R. 309-10).  See DSM at 34.  Dr. Unwalla opined that Plaintiff would have mild difficulties in maintaining social functioning, in focusing and maintaining attention, and in concentration, persistence and pace, but that she was capable of performing activities of daily living (A.R. 309).  Dr. Unwalla further opined Plaintiff would have "no limitations performing simple and repetitive tasks and mild limitations in detailed and complex tasks," and would have "mild" limitations in performing work activities "on a consistent basis without special or additional

---

[9]     Plaintiff's inability to perform serial sevens and threes or to name Presidents and capitals may have been the result of her limited education.  Plaintiff had a fourth grade education in Mexico (A.R. 223).

supervision," "completing a normal workday or work week," "accepting instructions from supervisor[s] and interacting with coworkers and with the public," and in handling "the usual stresses, changes and demands of gainful employment" (A.R. 310).

State agency physicians reviewed the records and opined that Plaintiff's alleged physical and mental impairments were not severe, finding: (1) Dr. Estafan's opinions inconsistent with his treatment records and "overly restrictive" in light of the record evidence, and giving "great weight" to Dr. Unwalla's opinion; and (2) Dr. Ustaris' opinion was "overly restrictive given the lack of positive findings." See A.R. 60-64, 70-72, 82-88.

## II. Substantial Evidence Supports the Conclusion that Plaintiff Can Work.

Substantial evidence supports the conclusion Plaintiff is not disabled. As summarized above, the record reflects only limited treatment for Plaintiff's alleged conditions, adequate control of her symptoms with medication, and findings of only minimal impairment on medical testing. Consultative examiners found Plaintiff has a

///
///
///
///
///
///
///

significantly greater physical capacity than the ALJ assessed,[10] and

that Plaintiff would have, at most, "mild" psychiatric limitations.

The State agency physicians interpreted Plaintiff's none-to-mild

psychiatric limitations as "not severe," i.e., having no more than a

minimal effect on Plaintiff's ability to work.  See A.R. 60-64; see

also Social Security Ruling 85-28 at *3-4 (defining when an alleged

impairment is "not severe").

    Under the circumstances of this case, the examining physicians'

opinions furnish substantial evidence supporting the ALJ's decision.

See Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007) (discussing

deference owed to examining physician opinions in determining a

claimant's ability to work; where an examining physician provides

"independent clinical findings that differ from findings of the

treating physician, such findings are 'substantial evidence'")

---

    [10]    Dr. Ustaris assessed an ability to do medium work with
a limitation to "frequent" overhead reaching and "frequent"
pushing and pulling with the right upper extremity.  See A.R.
303-04; see also Social Security Ruling 83-10 (defining
"frequent" as "occurring from one-third to two-thirds of the
time").  The ALJ limited Plaintiff to sedentary work, i.e., work
that involves lifting and carrying no more than 10 pounds
occasionally, with no overhead reaching for the right upper
extremity.  Compare A.R. 20-21 with A.R. 303-04.  The ALJ's
residual functional capacity assessment did not include any
pushing or pulling limitation (A.R. 20-21).  The ALJ's failure to
include any pushing or pulling limitation is harmless in light of
the vocational expert's testimony.  The vocational expert
testified, consistent with the Dictionary of Occupational
Titles ("DOT"), that a person with the residual functional
capacity the ALJ found to exist could perform Plaintiff's past
relevant work as a final assembler (DOT 713.687-018), as
generally and actually performed (A.R. 50-54).  The final
assembler job requires no more than "frequent" use of a
negligible amount of force to push or pull objects.  See DOT
713.687-018 Final Assembler, 1991 WL 679271.

(citations and internal quotations omitted); <u>Tonapetyan v. Halter</u>, 242
F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion alone
constituted substantial evidence "because it rests on his own
independent examination").  The non-examining State agency physicians'
opinions that Plaintiff's mental impairments are "not severe" further
support the ALJ's denial of disability benefits.  <u>See</u> <u>Andrews v.
Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (where the opinions of
non-examining physicians do not contradict "all other evidence in the
record" an ALJ properly may rely on these opinions); <u>accord</u> <u>Curry v.
Sullivan</u>, 925 F.2d 1127, 1130 n.2 (9th Cir. 1991).

     The vocational expert testified that a person with the residual
functional capacity the ALJ found to exist could perform Plaintiff's
past relevant work (A.R. 53-54).  The ALJ properly relied on this
testimony in denying disability benefits.  <u>See</u> <u>Barker v. Secretary of
Health and Human Services</u>, 882 F.2d 1474, 1478-80 (9th Cir. 1989);
<u>Martinez v. Heckler</u>, 807 F.2d 771, 774-75 (9th Cir. 1986).

     To the extent any of the medical evidence is in conflict, it was
the prerogative of the ALJ to resolve such conflicts.  <u>See</u> <u>Lewis v.
Apfel</u>, 236 F.3d 503, 509 (9th Cir. 2001).  When evidence "is
susceptible to more than one rational interpretation," the Court must
uphold the administrative decision.  <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d
at 1039-40; <u>accord</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir.
2002); <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).  The
Court will uphold the ALJ's rational interpretation of the evidence in
the present case notwithstanding any conflicts in the record.
///

**III. The ALJ Stated Sufficient Reasons for Rejecting Dr. Estafan's Opinions.**

Generally, a treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion. . . . This is especially true when the opinion is that of a treating physician") (citation omitted); see also Orn v. Astrue, 495 F.3d at 631-33 (discussing deference owed to treating physician opinions). Where, as here, a treating physician's opinions are contradicted by another physician, the opinions can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).[11] Contrary to Plaintiff's arguments, the ALJ stated sufficient reasons for discounting Dr. Estafan's opinions.

As detailed above, Dr. Estafan opined, inter alia, that Plaintiff was moderately impaired in her concentration, and, in a check-the-box portion of the form, checked that Plaintiff had "poor" ability to maintain concentration, attention and persistence, to perform activities within a schedule and maintain regular attendance, to complete a normal workday or workweek without psychologically based symptoms, and to interact with the public, supervisors, and coworkers (A.R. 429-31). The ALJ stated the following reasons for discounting

---

[11]    Rejection of an uncontradicted opinion of a treating physician requires a statement of "clear and convincing" reasons. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

Dr. Estafan's opinions: (1) the opinions were not supported by objective evidence and were inconsistent with the record as a whole; (2) the opinions concluded that Plaintiff was unable to work, an issue reserved for the Commissioner; (3) the opinions provided no explanation for the assessed limitations which would preclude substantial gainful activity; (4) Dr. Estafan's treatment notes provided no explanation as they primarily summarized Plaintiff's subjective complaints, diagnoses, and treatment, but did not provide objective clinical or diagnostic findings to support the functional assessment; and (5) the opinions were inconsistent with Plaintiff's admitted activities of daily living.  See A.R. 24 (citing A.R. 428-32).

The ALJ was entitled to discount Dr. Estafan's insufficiently supported opinions.  As the ALJ observed, no clinical findings supported Dr. Estafan's opinions that Plaintiff had only "poor" abilities.  Dr. Estafan's treatment notes and the "comments" in his evaluation simply reflect some of Plaintiff's self-reports (A.R. 429). Moreover, before Dr. Estafan rendered his opinions, Plaintiff had reported she was "doing well" on her medications, "happy [with] her life style," and Dr. Estafan had described Plaintiff as "stable" (A.R. 423, 425, 445).  In the same month Dr. Estafan provided his opinions, and for months afterward, Plaintiff reported she was "very pleased" with her progress, was "really improving," had no panic attacks, was sleeping well, had no crying spells, socialized, and was more animated (A.R. 444-45).

///

///

An ALJ may reject a treating physician's opinion where, as here, the opinion is not supported by the physician's own treatment notes or objective clinical findings. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes); Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly may reject treating physician's opinions that "were so extreme as to be implausible and were not supported by any findings made by any doctor. . ."); 20 C.F.R. §§ 404.1527(c), 416.927(c) (factors to consider in weighing treating source opinion include the supportability of the opinion by medical signs and laboratory findings, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship including examinations and testing, whether the opinion is from a specialist concerning issues related to the source's area of specialty, as well as the opinion's consistency with the record as a whole).

An ALJ may also reject a treating physician's opinion where, as here, the physician premised the opinion "to a large extent" on the
///

claimant's properly discounted subjective complaints.[12]  See Morgan v.
Commissioner, 169 F.3d 595, 602 (9th Cir. 1999); accord Mattox v.
Commissioner of Social Security, 371 Fed. App'x 740, 742 (9th Cir.
2010); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989); compare
Ghanim v. Colvin, 763 F.3d 1154, 1162-63 (9th Cir. 2014) ("when a
[treating physician's] opinion is not more heavily based on a
patient's self-reports than on clinical observations," an ALJ may not
discount the treating physician's opinion based on the patient's lack
of credibility).


    The Court observes that two of the ALJ's stated reasons for
rejecting Dr. Estafan's opinions may not have been "specific and
legitimate."  Contrary to the ALJ's second stated reason, Dr.
Estafan's opinions do not expressly conclude that Plaintiff is unable
to work.  See A.R. 428-32.  Contrary to the ALJ's fifth stated reason,
Dr. Estafan's opinions may not have been inconsistent with Plaintiff's
admitted activities of daily living.  See A.R. 238-46.
Notwithstanding the possible infirmity of two of the ALJ's stated
reasons, there is no material error herein because the ALJ's remaining
reasons are "specific and legitimate" reasons for rejecting Dr.
Estafan's opinions.  See Tommasetti v. Astrue, 533 F.3d at 1038 (court
will not reverse an ALJ's decision when it is clear from the record
that the ALJ's error is inconsequential to the ultimate nondisability

---

        [12]    Plaintiff does not challenge the ALJ's credibility
determination, and no material error appears in connection with
this determination.  Under the circumstances of this case, the
boilerplate language in the first full paragraph on page 22 of
the Administrative Record constitutes immaterial error.  See
Laborin v. Berryhill, 2017 WL 3496031 (9th Cir. Aug. 16, 2017).

determination) (citations omitted); cf. Carmichael v. Commissioner, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (despite the invalidity of one or more of an ALJ's stated reasons for discounting a claimant's credibility, the court properly may uphold the ALJ's decision where the ALJ stated sufficient valid reasons).

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 25, 2017.


                              _____/s/_____
                                  CHARLES F. EICK
                         UNITED STATES MAGISTRATE JUDGE